USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/20/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                :
UNITED STATES OF AMERICA                :
                :      18-CR-262 (VEC)
         -against-                    :
                :      ORDER
VINCENT SCHIFANO,                      :
                :
                    Defendant.    :
------------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        WHEREAS on August 26, 2020, Mr. Schifano, acting through counsel, filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c), Dkt. 45;

        WHEREAS on August 27, 2020, Mr. Schifano filed an Amended Motion for Compassionate Release with Mr. Schifano's medical records and medications redacted, Dkt. 47;

        WHEREAS on September 25, 2020, the Government opposed Defendant's Motion, and provided Mr. Schifano's Bureau of Prisons ("BOP") medical records (under seal) and his disciplinary records, Dkt. 50;

        WHEREAS on October 9, 2020, Mr. Schifano replied in support of his Amended Motion, Dkt. 52;

        WHEREAS Mr. Schifano has exhausted his administrative remedies as required by the statute, 18 U.S.C. § 3582(c)(1)(A), Dkt. 47 at 1–2; Dkt. 50 at 6 n.3; and

        WHEREAS this Court has broad discretion when deciding a motion pursuant to 18 U.S.C. § 3582(c), but must determine whether (i) extraordinary and compelling reasons exist to grant such relief, (ii) whether a sentence reduction would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), and (iii) whether the release of the Defendant would pose a danger to the community, *United States v. Zullo*, ___ F.3d ___, No. 19-CR-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020); *United States v. Rodriguez*, No. 17-CR-157, 2020 WL

3051443, at *1 (S.D.N.Y. June 8, 2020); *United States v. Lisi*, No. 15-CR-457, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020);

IT IS HEREBY ORDERED that Mr. Schifano's Motion for Compassionate Release is DENIED.  Because of the COVID-19 pandemic, Mr. Schifano has demonstrated the existence of "extraordinary and compelling reasons" to reduce his sentence.  18 U.S.C. § 3582(c)(1)(A)(i).  Specifically, Mr. Schifano suffers from obesity, high blood pressure, high cholesterol, cellulitis, and has a history of bladder cancer.  *See* Def. Motion, Dkt. 47 at 4.  He is also 65 years old, an additional risk factor for severe COVID-19.  *Id.*  Indeed, the Government concedes that Mr. Schifano has met his burden of establishing extraordinary and compelling reasons because of his increased risk of an adverse outcome were he to contract COVID-19.  Gov. Opp., Dkt. 50 at 6.

The Court acknowledges that the BOP's screening and testing procedures at FCI Estill, in which Mr. Schifano is currently incarcerated, appear to be focused on identifying symptomatic individuals, *see* Def. Reply, Dkt. 52 at 4, despite common knowledge that COVID-19 can be spread asymptomatically.  Further, there is obviously a greater risk of contracting COVID-19 if one is living in a congregate setting than if one is living in a single-family home.  While BOP could and should have better protocols for routine, widespread testing of inmates and staff, FCI Estill seems to be effectively managing the situation: only 12 staff members and no inmates are currently positive for COVID-19 as of the date of this decision.  *See* www.bop.gov/coronavirus/.

Although Mr. Schifano's pre-existing conditions and obesity present extraordinary and compelling reasons to consider reducing his sentence, at least two of the Section 3553 factors counsel against a reduction of sentence: the seriousness of the offense and deterrence.  Mr. Schifano's crimes were undoubtably serious.  The purposes of his original 108-month sentence would be seriously undermined by reducing that sentence by 70%.  Mr. Schifano laundered millions of dollars for two violent organizations, the Fuerzas Armadas Revolucionarias de

Colombia (FARC) and the Sinaloa Cartel.  Presentence Report, Dkt. 19 ¶¶ 11–14.  In his allocution, Mr. Schifano admitted that he was involved "in a number of meetings with others in Florida, wherein, [he and others] discussed the transfer of approximately $15 million U.S.D. from New York to Miami, and ultimately to Colombia, South America, in relation to illegal narcotics activities of a Colombian drug trafficking organization."  Plea Tr. at 20.  In short, Mr. Schifano was "FARC's money laundering guy," who represented to a confidential source that he had "been laundering money for 20 years — for the Italians, the Russians, and now the FARC."  Sentencing Tr., Dkt. 50-1 at 25–26.  The seriousness of Mr. Schifano's offense is undeniable, and a reduction in his sentence, even in the current circumstances, is simply unwarranted.

      Mr. Schifano's substantial sentence was also appropriate from a deterrence perspective, both general and specific.  Although the Defense represents that Mr. Schifano has learned his lesson and is "determined not [to] engage in any further behavior that would jeopardize his freedom," Def. Reply, Dkt. 52 at 9, the Court has no basis on which to make that determination.  As noted at the time of sentence, Mr. Schifano spent much of his adult life as a money launderer.  Sentencing Tr., Dkt. 50-1 at 25.  While a couple of years in jail may be sufficient to deter Mr. Schifano from any future criminal conduct, the Court is skeptical.  Beyond specific deterrence, however, the radically shortened sentence sought by Mr. Schifano would not support the goal of general deterrence.  As noted in the Government's submission, Mr. Schifano's arrest and prosecution garnered press attention in Colombia.  Gov. Opp., Dkt. 50 at 9.  It is likely that his early release from prison would also, sending the message that money laundering just is not taken that seriously in the United States.  Put differently, the goals of specific and general deterrence would not be served by a reduction of sentence.

      Finally, the Court must consider whether Mr. Schifano poses a danger to others.  Mr. Schifano appears to be a model prisoner, avoiding disciplinary infractions and taking advantage

of BOP courses and opportunities.  *See* Ex. C, Def. Motion, Dkt. 47-3; Ex. B, Gov. Opp., Dkt. 50-2.  But as this Court said during Mr. Schifano's sentencing, "money launderers are as critical to the narcotics trade, to narcos, as people who grow and process cocaine. Without money launderers, the operation in Colombia cannot continue."  Sentencing Tr., Dkt. 50-1 at 27.  Although Mr. Schifano himself is not violent, he was a critical cog in the effective operation of at least two violent, destabilizing organizations, providing an essential service that furthered violence, endangered communities, and destabilized nations.[1]

While the Court sympathizes with Mr. Schifano's pre-existing conditions, history of cancer, and concerns about contracting COVID-19 while incarcerated, the seriousness of his offense and the need for deterrence counsel against any reduction in sentence at this time.[2]  Accordingly, Mr. Schifano's motion is denied.

The Clerk of Court is respectfully directed to close docket entries 45 and 47.

**SO ORDERED.**

Date:  October 20, 2020  
       New York, NY

_____  
**VALERIE CAPRONI**  
**United States District Judge**

---

[1] The Court also notes that Mr. Schifano provided no hint of his re-entry plan, giving the Court reason to be concerned that he would return to money laundering, despite his attorney's representation that he has learned his lesson. Def. Reply, Dkt. 52 at 9. The Defendant represented that if this Court were to grant his motion, he wishes to re-unite with his minor daughter. *Id*. at 14. At no point, however, does Defendant lay out a cogent plan: where he would live and how he would support himself (although he is over 65 and therefore theoretically eligible to draw Social Security, it is unclear whether he has ever paid into the system) are entirely unknown.

[2] That balance could, of course, change if BOP's ability to control the spread of COVID in its facilities (and in FCI Estill particularly) should significantly deteriorate or if Defendant's health were to deteriorate markedly.  In this case, however, the Court is balancing the need to adequately punish Defendant for a very serious offense against his fear of contracting a disease that could be, for him, quite serious.